UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x    17-cv-06501 (FB)(RLM)

Cristian D. Cortez,

Plaintiff

-against-

Forster & Garbus, LLP,

Defendant

-------------------------------------------------------------------x

DEFENDANT'S MEMORANDUM OF LAW<br/>IN OPPOSITION TO PLAINTIFF'S MOTION<br/><u>FOR ATTORNEYS FEES AND COSTS</u>

ROBERT L. ARLEO, ESQ.
Attorney for the Defendant
380 Lexington Avenue, 17th Fl.
New York, New York  10168
(212) 551-1115

**Table of Contents**

**Page**

PRELIMINARY STATEMENT………………………………………….    1

ARGUMENT…………………………………………………………..    4

LEGAL MANDATES REGARDING
MOTIONS FOR ATTORNEYS FEES………………………………...    4

THE REQUESTED FEES SHOULD
BE DRAMATICALLY REDUCED………………………………………    13

THE COURT IMPROPERLY
AWARDED THE FULL $1,000
IN FDCPA STATUTORY
DAMAGES TO THE PLAINTIFF………………………………………..    14

THE PLAINTIFF OBTAINED
LIMITED SUCCESS……………………………………………………    20

FRE 408 DOES NOT PRECLUDE
DISCLOSURE OF PLAINTIFF'S
SETTLEMENT DEMAND………………………………………………    22

CONCLUSION…………………………………………………………    25

# TABLE OF CASES

Page

*Abby v. Paige*,
2013 WL 141145, at *28 (S.D. Fla.)……………………………………………… 17

*Abrahmov v. Fidelity Info. Corp.*,
2013 WL 5352473, at *4 (E.D.N.Y.)…………………………………………….. 15

*Annis v. E. Asset Mgmt., LLC*,
2010 WL 1035273, at *5 (W.D.N.Y.)……………………………………………… 17

*Barfield v. N.Y. City Health & Hospital Corp.*,
537 F. 3d 132 (2d Cir. 2008)…………………………………………………… 21

*Baruch v. Healthcare Receivable Mgmt., Inc.*,
2007 WL 3232090, at *4 (E.D.N.Y.)…………………………………………… 16

*Bonafede v. Advanced Credit Solutions, LLC*,
2012 WL 400789, at*2-3 (W.D.N.Y.)…………………………………………….. 19

*Byrnes v. Eltman Law, P.C.*,
2019 WL 4578922 (E.D.N.Y.)……………………………………………………… 13

*Carr v. Health Ins. Plan of Greater New York, Inc.*,
2001 WL 563722 (S.D.N.Y.)……………………………………………………… 23

*Carney v. American Univ.*,
151 F.3d 1090, 1095 (D.C. Cir. 1998)…………………………………………….. 23

*Centerbar v. Esser James & Associates, LLC*,
2018 WL 335880, at *7 (W.D.N.Y.)…………………………………………….. 15

*Chen v. Chen Qualified Settlement Fund*,
552 F.3d 218, 225 (2d Cir. 2009)…………………………………………………. 7

*Clarke v. Frank*,
960 F.2d 1146, 1153 (2d Cir. 1992)……………………………………………… 6

*Clomon v. Jackson*,
988 F.2d 1314, 1316 (2d Cir. 1993)…………………………………………….. 15

*Copper v. Global Check & Credit Servs.*,
2010 WL 5463338, at *2 (W.D.N.Y.)……………………………………………. 19

*Cordero v. Collection Co., Inc.*,
2012 WL 1118210, at *2 (E.D.N.Y.)………………………………………………….. 18

*Datiz v. Int'l Recovery Assocs.*,
15-cv-3549 (DRH)(AKT)(E.D.N.Y.)…………………………………………………. 12

*Defilippo v. Morizio*,
759 F.2d 231, 235 (2d Cir. 1985)…………………………………………………… 4

*Divella v. Empire Credit & Collection, Inc.*,
2017 U.S. Dist. LEXIS 25008, at *4 (E.D.N.Y.)(Westlaw citation unavailable)………….. 16

*Diver v. Goddard Mem'l Hosp.*,
783 F.2d 6, 6 (1st Cir. 1987)…………………………………………………… 21

*Dona v. Midland Credit Mgmt., Inc.*,
2011 WL 941204, at *3 (E.D.N.Y.), adopted by 2011 WL 939714 (E.D.N.Y.)…………… 15

*Dunn v. Advanced Credit Recovery, Inc.*,
2012 WL 676350, at *3 (S.D.N.Y.)…………………………………………………… 16

*Eisenberg v. University of NM*,
936 F.2d 1131, 1134 (10th Cir. 1991)…………………………………………….. 23

*E.S. v. Katonah- Lewisboro School Dist.*,
796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011)…………………………………………… 21

*Farmer v. Riverwalk Holdings, Ltd.*,
2014 WL 1745433, at *2-3 (E.D. Tenn.)……………………………………………… 16

*Farrar v. Hobby*,
506 U.S. 103, 119, 113 S.Ct. 566 (1992)…………………………………………… 20

*Fasten v. Zager*,
49 F. Supp. 2d 144, 150 (E.D.N.Y.)………………………………………………… 17

*Finkel v. Omega Common Servs.*,
543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)…………………………………………… 22

*Fontana v. C. Barry & Assocs.*,
2007 WL 2580490 (W.D.N.Y.)……………………………………………………… 19

*Gierlinger v. Gleason*,
160 F.3d 858, 876 (2d Cir. 1998)…………………………………………………… 14

*Gingras v. Lloyd*,
585 F. Supp. 684 (D. Conn. 1983)……………………………………………….. 21

*Goss v. Killian Oaks House of Learning*,
248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003)………………………………………. 6

*Grant v. Martinez*,
973 F.2d 96, 99 (2d Cir. 1992)……………………………………………………… 6

*Graziano v. Harrison*,
950 F.2d 107, 114 (3rd Cir. 1991)…………………………………………… 18

*Harding v. Check Processing, LLC*,
2011 WL 1097642, at * 3 (N.D. Oh.)………………………………………………. 17

*Healy v. Midpoint Resolution Group, LLC*,
2010 WL 890996, at *6-7 (W.D.N.Y.)……………………………………………… 17

*Hensley v. Eckerhart*,
461 U.S. 424, 434, 103 S.Ct. 1933 (1983)…………………………………………… 5

*Hooks v. Forman HOH Elaides & Ravin, LLC*,
2015 WL 5333513, at * 41 (S.D.N.Y.)…………………………………………….. 18

*Husain v. Springer*,
2013 WL 1122718 (E.D.N.Y.)……………………………………………………… 22

*Kassim v. City of Schenectady*,
415 F.3d 246, 254 (2d Cir. 2005)……………………………………………………. 20

*Katz v. Sharinn & Lipshie, P.C.*,
2013 WL 4883474, at *19-20 (E.D.N.Y.)………………………………………….. 18

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149, 173 (2d Cir. 1998)…………………………………………………… 14

*Labarbera v. J.E.T. Res. Inc.*,
396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005)………………………………………… 4

*Lester E. Cox Med. Ctr. v. Huntsman*,
408 F.3d 989, 994 (8th Cir. 2005)…………………………………………….... 18

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir.1994)…………………………………………………………… 4

*Matter of Fisher*,
908 F.Supp.2d 468 (S.D.N.Y. 2012)……………………………………………………… 23

*Mostiller v. Chase Asset Recovery Corp.*,
2010 WL 33503023, at *2 (W.D.N.Y.)……………………………………………………… 19

*Natale v. Hartford*,
1989 U.S. Dist. LEXIS 13212 *16 (D.Conn.)……………………………………………….. 21

*New York State Ass'n for Retarded Children, Inc.. v. Carey*,
771 F.2d 1136 (2d Cir. 1983)……………………………………………………………… 7

*New York City Unemployed & Welfare Council v. Blezenhoft*,
742 F.2d 718, 724 (2d Cir. 1984)………………………………………………………….. 21

*Pino v. Locascio*,
101 F.3d 235, 237-38 (2d Cir. 1996)……………………………………………………… 20

*Pipiles v. Credit Bureau of Lockport, Inc.*,
886 F.2d 22, 27-28 (2d Cir. 1989)…………………………………………………….….. 17

*Popham v. City of Kennesaw*,
820 F.2d 1570 (11th Cir. 1987)…………………………………………………………….. 21

*Powell v. Caray Int'l, Inc.*,
547 F. Supp. 2d 1281 (S.D. Fla. 2008)…………………………………………………….. 21

*Quinn v. Recovery Partners, LLC*,
2011 WL 2976288, at *5 (M.D. Pa.)……………………………………………………….. 15

*Quintanilla v. Credit Smart*,
 LLC, 2014 U.S. Dist. LEXIS, at *5-6 (E.D.N.Y.) adopted by
2014 WL 3530977 (E.D.N.Y.)……………………………………………………………. 16

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
568 F.3d 345, 351 (2d Cir. 2009)…………………………………………………………. 23

*Resolution Trust Corp. v. Blasdell*,
154 F.R.D. 675, 681 (D. Ariz. 1993)……………………………………………………… 23

*Richard v. Oak Tree Group, Inc.*,
2008 WL 5060319, at * 24 (W.D. Mi.)…………………………………………………….. 19

*Risorto v. Malcolm S. Gerald & Assocs., Inc.*,
2014 WL 1328524, at *3 (D. Colo.)……………………………………………………….. 16

*Rivera v. Nat'l Check Processing, LLC*,
2011 WL 996340, at * 2 (W.D. Tex.)……………………………………………………… 16

*Savino v. Computer Credit, Inc.*,
164 F.3d 81, 86 (2d Cir. 1998)………………………………………………………... 15

*Schwartz v. Jones*,
297 N.Y.S.2d 275, 276 (Ct. App. 1969)………………………………………………… 7

*Separ v. Nassau County Dep't of Social Services*,
327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004)……………………………………….. 21

*Sterling v. Am. Credit & Collection, LLC*,
2012 WL 3553757, at * 3 (D. Col.)……………………………………………………… 19

*Thornton v. United Collections Servs., L.L.C.*,
2007 U.S. Dist. LEXIS 92997, at *2-3 (E.D. Mich.)(Westlaw citation unavailable)………… 20

*Urico v. Parnell Oil Co.*,
708 F.2d 852, 854-55 (1st Cir. 1983)…………………………………………………… 23

*Williamsburg v. Fair Housing Comm. v. Ross-Rodney Housing Corp.*,
599 F. Supp. 509, 518 (S.D.N.Y. 1984)………………………………………………… 7

*Williams v. New York City Housing Auth.*,
975 F. Supp. 317 (S.D.N.Y. 1997)……………………………………………………… 7


STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 11)……………………………………………………………………… 23

Fed. R. Evid. 408(a)……………………………………………………………………… 22

Fed. R. Evid. 408(b)…………………………………………………………………... 22

New York Rules of Professional Conduct 1.4…………………………………………… 2

2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence § 408.02[1]*
(Joseph M. McLaughlin ed., 2d ed.)…………………………………………………... 23

15 U.S.C. § 1692k(a)(2)(A)……………………………………………………………… 15

15 U.S.C. § 1692k(b)(1)………………………………………………………………… 15

This Memorandum of Law is submitted by the Defendant, Forster & Garbus, LLP, in opposition to the Plaintiff's motion for attorney's fees and costs. For many reasons, the demand for $41,306.50 in attorneys fees is wildly excessive and seeks to punish the Defendant for a legitimate attempt to collect a judgment from the Plaintiff entered based upon a debt he incurred to Discover Bank (DB) via the use of a DB credit card. Initially, the Court must consider the simplicity of the Fair Debt Collection Practices Act (FDCPA) allegations set forth in the Plaintiff's Complaint together with the fact that the Plaintiff's attorneys, Barshay Sanders, PLLC ("BS"), have admittedly filed *thousands* of FDCPA actions in federal courts throughout the United States. The Complaint sets forth the signature of BS attorney Craig B. Sanders and was filed on November 8, 2017. Since that date PACER records show that BS has filed well over one thousand FDCPA actions in the states of Washington, California, Florida, Illinois, Texas, Washington, New Jersey and (mostly) New York. BS attorney David Barshay is also an attorney of record in the vast majority of these FDCPA actions. Many of the over one thousand BS complaints set forth the same FDCPA boilerplate allegations. On November 8, 2017, the day the initial Complaint in this action was filed, PACER records indicate a total of *twenty one (21)* other FDCPA actions were filed by BS on that very same day.

In paragraph 9 of Mr. Sanders' Declaration in support of Plaintiff's motion for attorneys fees, he alleges "Along with my partner David M. Barshay, I have prosecuted thousands of cases brought under the FDCPA." In paragraph 6 of his Declaration, Mr. Barshay confirms same. Thus, both Mr. Sanders and Mr. Barshay should be able to litigate FDCPA actions with lazer-like and rocket speed precision. Instead, the BS billing records (Dkt. No. 53-1) indicate bill

padding of an incredible nature, unbelievable assertions of specific time commitments and an overall treatment of a simple FDCPA action as if it were a complex litigation deserving of the attention of multiple attorneys. As the Court will see below, this is nothing new for BS.

The Plaintiff's fee petition is an attempt to convince this Court that it required *three (3)* attorneys, two of whom admit to prosecuting thousands of FDCPA cases, to litigate a simple and straightforward individual FDCPA action. Any of the three BS attorneys alone could have easily worked this simple action. However, that is not the BS business model. Instead, the business model is to file thousands of FDCPA actions and have multiple (in most cases, the same) attorneys appear on the record and perform unnecessary, duplicative and inflated tasks for the day a motion for attorneys fees could possibly occur. If a debt collector wishes to settle early, and as in this case, they are usually met with a ridiculous and unjustified settlement demand.

The litigation tasks undertaken by BS attorneys in FDCPA actions are limited to drafting simple "cut and paste" complaints, reviewing answers, drafting simple cut and paste automatic disclosures and reviewing simple automatic disclosures served by debt collectors, drafting simple boilerplate cut and paste discovery demands, filing cut and paste dispositive motions, opposing dispositive motions and attending depositions which are mostly noticed by debt collectors, rarely by BS. The BS attorneys also attend court conferences. As in this action, the FDCPA claims advanced by BS are usually simple, uncomplicated and straightforward. The FDCPA is not complex federal litigation.  There is simply no reason for the two BS partners, together with an associate BS attorney, who is also well experienced in the FDCPA, to *allegedly* engage in every aspect of the FDPCA litigation, especially one as simple as the herein action. The attorney "load-up" is done solely to dramatically increase claims for attorneys fees in FDCPA actions.

BS contends they devoted a whopping 178 hours to this action. As only one associate BS attorney should have worked this action, the 178 hours equal a total of *five weeks* of seven hour common associate work days. Indeed, it was the Court, not the Plaintiff's attorneys, who dictated summary judgment for the Plaintiff on only one of the FDCPA claims set forth in his original Complaint. When considering the grossly excessive BS request for fees, this Court should observe the following:

-none of the three BS attorney Declarations indicate that the alleged billing records were contemporaneously kept as is required;

-a non-attorney administrative assistant identified as "MM" disappeared after February 1, 2018, thus all administrative tasks thereafter were billed at attorney rates;

- the Plaintiff's attorneys did not notice or take any depositions, served only one initial set of cut and paste boilerplate discovery demands, with no resulting discovery dispute motion practice based upon any failure by the Defendant to respond thereto, and appeared at a total of three in-court conferences, and one oral argument, all requiring a few total hours;

-the Plaintiff was forced to drop that portion of his Complaint which alleged that the statute of limitations had expired in conjunction with his DB debt when the Defendant proved that statute of limitations could not be an issue as legal action was commenced against the Plaintiff years before and a judgment was obtained prior to the sending of the subject letter;

-including notices of appearances and requests for adjournment, the Plaintiff's attorneys filed a total of 67 pages on the docket, thus they are asking to be paid over $600 (six hundred dollars) per page.

On February 1, 2018, and in a response for a settlement demand conveyed via email by the

3

undersigned attorney for the Defendant, BS attorney David Barshay conveyed a settlement demand in the amount of $7,500. For the reasons set forth below, Fed. R. Civ. P. 408 does not preclude disclosure of this settlement demand in conjunction with the herein fees opposition Memorandum. The BS billing records indicate that, as of February 1, 2018, a total of $1,632.00 in attorney and administrative support fees are alleged (Defendant contends that this amount is excessive). Statutory FDCPA damages in the amount of $1,000 are the maximum available to the Plaintiff and the filing fee and service of process fee totals $495.00. Thus, even presuming that the attorneys fees alleged as of February 1, 2018 are reasonable (same are not), the maximum value of this action as of February 1, 2028 was $3,127. However, the more than twice that amount settlement demand is part of the BS business model. This is a case about basically nothing which did not serve any public purpose and which did not truly redress any of the type of debt collection violations sought to be prevented by the FDCPA. It should have been resolved early for a few thousand dollars. Thus, all of these factors must be considered by the Court in conjunction with rendering a decision regarding the Plaintiff's motion for attorneys fees.

LEGAL MANDATES REGARDING
MOTIONS FOR ATTORNEYS FEES

Attorneys must exercise "billing judgment" in regard to fee petitions in that they must act as they would under the ethical and market restraints that control a private sector attorney's behavior in billing his own clients. In the private sector "billing judgment" is an important component in fee setting. **Hours that are not properly billed to a client also are not properly billed to one's adversary pursuant to statutory authority**. *Defilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). Counsel for a prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice is obligated ethically to exclude such hours from a fee petition. *Labarbera v. J.E.T. Res. Inc.*, 396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005). Indeed, the United States Supreme Court has mandated that attorneys submit an honest fee petition when seeking fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)("Counsels for a prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."). Representations made in attorney fee petitions are serious matters. Inflated time records are subject to potential serious ramifications. *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994)(concluding that billing records submitted in fee petition were "eyebrow raising" and finding that fee determinations require a "concientious and detailed inquiry into the validity of the representations that a certain number of hours were useful and were reasonably expended.")

It is clear that BS failed to exercise proper "billing judgment". This Court must ponder whether BS acted under the ethical and market restraints that control a private sector attorney's behavior in billing his own clients as it is unfathomable that the hours alleged are proper.

Therefore, these hours cannot be properly billed to the herein Defendant.

It is further clear that BS failed to make a good-faith effort to exclude from their fee request hours that are excessive, redundant or otherwise unnecessary. A lawyer in private practice would be obligated not to submit such an inflated fee petition to a client. Representations made in the BS fee petition are serious matters. These inflated time records are subject to potential serious ramifications as the billing records are eyebrow raising. A conscientious and detailed inquiry into the validity of the representations that these alleged hours were useful and were reasonably expended by the Plaintiff's attorneys could only result in a flat and resounding "no."

Hours spent by an attorney appearing in court or at deposition can be verified and reviewed. In contrast, hours spent reviewing records, talking to other lawyers, preparing legal documents, advising clients etc. cannot be verified. Thus, a court is required to trust a lawyer's assertions that the hours claimed represent necessary work which was actually performed. An entitlement to an award of attorneys fees is not a *carte blanche* license to churn attorneys fees without the threat of any sanction. *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003)(denying fees entirely.) The BS attorneys obviously view their FDCPA statutory entitlement to fees as a *carte blanche* license to churn attorneys fees. This Court should show that their belief they could do so without any threat of sanction was patently incorrect.

In determining whether hours are "reasonable," the relevant question "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Such an examination is "dependent on the unique facts of each case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). A district court "must

examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *DiFilippo v. Morizio*, *supra* at 235. This includes an assessment of "what is appropriate for the scope and complexity of the particular litigation." *New York State Ass'n for Retarded Children Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983). In this analysis, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFillippo,* at 236.

Intentionally inflating a fee request constitutes a violation of legal ethics. *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 225 (2d Cir. 2009). When an attorney is denied a fee request the authorities speak of it as a penalty visited upon him for misconduct. *Schwartz v. Jones*, 297 N.Y.S.2d 275, 276 (Ct. App. 1969). The billing records submitted by BS demonstrate intentional attorney overstaffing in that one attorney could have *easily* handled the litigation tasks required in this action. Indeed, the use of more than one attorney is reasonable in class action litigation where each attorney made a distinct contribution by his presence or participation." *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 326-27 (S.D.N.Y. 1997). However, when two or more attorneys duplicate each other's work, as the time records submitted in this action confirm, the duplicated work is unnecessary and, therefore, is deemed "unreasonable". *Williamsburg v. Fair Housing Comm. v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984). The following billing entries, as referenced in Dkt. No. 53-1, are particularly noted to sample the unreasonableness of many of the billing entries:

-Attorney Craig B. Sanders (CBS) alleges that on 4/9/2017, he spent over an hour reviewing the subject one page collection letter and allegedly discussing "case" with an

unidentified individual, asking him to "request retainer from client". The activity should have taken an attorney with Mr. Sanders' level of FDCPA experience 15 minutes, tops, to complete;

-Attorney David Barshay (DB) alleges that on 10/5/2017, he spent 24 minutes reviewing an additional collection letter, and the subject letter, and marking "pre-litigation for drafting complaint." The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 5 minutes, tops, to complete;

-CBS alleges that on 1/3/2018, he spent almost 18 minutes reviewing a short email from the undersigned's Law Clerk sent to determine if service of process was completed. CBS alleges he then reviewed the docket and "….discussed same." with BS non-attorney MM. The activity should have taken an attorney with Mr. Sanders' level of FDCPA experience 5 minutes, tops, to complete;

-DB alleges that on 1/9/2018, he spent 36 minutes reviewing the simple 9 page Answer filed by the Defendant. The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 10 minutes, tops, to complete;

-DB alleges that on 1/17/2018, he spent 42 minutes drafting a boilerplate cover letter, entering proposed dates on scheduling questionnaire and preparing standard and short BS boilerplate FDCPA Rule 26 disclosures. The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 20 minutes, tops, to complete;

-DB alleges that on 2/1/2018 he spent *almost an hour* reading a page and a half standard form Rule 26f "meet and confer" letter sent by the undersigned attorney for the Defendant. A copy of this letter is attached herewith as Exhibit "1". The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience *5 minutes*, tops, to complete;

-DB alleges that on 2/8/2018 he spent *42 minutes* reading a one page letter from the undersigned attorney (advising therein that the statute of limitations FDCPA claim was baseless as a judgment was already entered), reading the judgment attached therewith and then logging on to New York ecourts to confirm the judgment. A copy of the referenced letter is attached herewith as Exhibit "2". This activity should have taken an attorney with Mr. Barshay's level of FDCPA experience *10 minutes*, tops, to complete.

-Attorney Jonathan Cader (JD) alleges that on 2/9/2018 he spent 42 minutes drafting and sending an email to Mr. Barshay regarding details of the initial conference before Magistrate Judge Roanne Mann, advising that the Plaintiff did not recall the judgment entered against him in regard to the civil court lawsuit, having a "discussion re: Avila/Carlin" (two Second Circuit FDCPA decisions) and whether to amend to include a claim of sewer service. This activity should have taken an attorney with Mr. Cader's FDCPA experience 20 minutes to complete.

-DB alleges that on 2/9/2018 he spent 42 minutes engaging in a discussion with the Plaintiff "re: settlement offer." As the offer was already rejected by the Defendant prior to that date, this activity should have taken Mr. Barshay 10 minutes, tops, to complete;

-JC alleges that on 2/9/2018 he spent 48 minutes regarding a "Correspondence" with Mr. Barshay "re: facts and conference with Court; drafted email summary of court conference." Yet this entry is repetitive of the prior entry by Mr. Cader on 2/9/2018 as set forth above;

-DB alleges that on 2/9/2018 he spent 24 minutes reviewing a short email from the undersigned and the 2 page simple stipulation withdrawing the claims based upon expiration of the statute of limitations. A copy of the stipulation is attached herewith as Exhibit "3". The activity should have taken *any* attorney 3 minutes, tops, to complete;

-DB alleges that on 2/10/2018 he spent 36 minutes reviewing a short email from the undersigned and the Defendant's discovery documents attached therewith (Deposition Notice, Request for Production, Request for Interrogatories, and Request for Admissions). A copy of these discovery demands are attached herewith as Exhibit "4". The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 10 minutes, tops, to complete;

-DB alleges that on 2/12/2018 he spent *12 minutes* reviewing the ECF order endorsing the stipulation withdrawing the claims based upon expiration of the statute of limitations. As this ECF entry is *one line*, the activity should have taken *any attorney* 1 minute, tops, to complete;

-DB alleges that on 2/25/2018 he spent an hour and 6 minutes preparing the standard BS boilerplate, cut and paste discovery demands, which were served in hundreds upon hundreds (if not thousands) of other FDCPA actions commenced by BS. A copy of these boilerplate, cut and paste discovery demands are attached herewith as Exhibit "5". The Defendant notes that both the interrogatories and the request for documents refer to the FDCPA "bona fide error" (BFE) defense despite the fact that the Defendant did not allege the BFE defense in its Answer. The Defendant further notes that absolutely no documents were produced by the Plaintiff in response to the Defendant's request for same. Thus, the activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 25 minutes, tops, to complete;

-DB alleges that on 3/20/2018 he spent *30 minutes* reviewing the Defendant's responses to the Plaintiff's Request for Admissions. A copy of these requests are attached herewith as Exhibit "6". The Defendant notes that most of the requests constitute reassertions of the exact allegations set forth in the Complaint which were already addressed in the Defendant's Answer. The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience *5 minutes*, tops, to

complete;

-DB alleges that on 3/30/2018 he spent 48 minutes reading a 1 page letter from the undersigned together with an FDCPA decision included therewith. A copy of the letter and the referenced decision is attached as Exhibit "7" herewith. The Second Circuit FDCPA decision referenced in the letter concerned a BS FDCPA action, thus Mr. Barshay was already well-versed therewith. The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 15 minutes, tops, to complete;

-DB alleges that on 4/20/2018 he spent 48 minutes reviewing the Defendant's responses to the Plaintiff's interrogatories. A copy of the responses are attached herewith as Exhibit "8". The activity should have taken an attorney with Mr. Barshay's level of FDCPA experience 10 minutes, tops, to complete;

-JC alleges that on 6/20/2018 he spent three and a half hours preparing the Plaintiff for his deposition telephonically and engaging in inter-office correspondence regarding the start time of the deposition. There is simply no justification for *allegedly* spending over three hours to prepare the Plaintiff for a deposition in regard to a simple FDCPA action alleging one FDCPA claim;

-JC alleges that on 6/21/2018 he spent five hours and 18 minutes defending the Plaintiff at his deposition, "debriefing" the Plaintiff after the deposition and discussing the deposition with attorney Sanders. The deposition of the Plaintiff commenced at 10:40 a.m. and ended on 12:01 p.m. (see Exhibit 11 herewith, p.1 and p. 69) which totals one hour and 21 minutes. Thus, Mr. Cader alleges he spent *almost 4 hours* debriefing the Plaintiff after the deposition and discussing the deposition with Mr. Sanders. Despite the improper block billing aspect of the entry, it is simply unfathomable that Mr. Cader devoted over three hours "debriefing" the Plaintiff and

discussing the deposition with Mr. Sanders. Thus, the Court should accord the same

level of belief to Mr. Cader's claim that he devoted over 3 hours to preparing the Plaintiff for his

deposition as it should accord to his claims of activity on the day of the Plaintiff's deposition.

The remainder of the billing records are replete with additional examples of bill padding and

inflation. In sum, the BS attorneys inflated their hours by at least four times over. This is not new

for BS; it is part and parcel of their FDCPA business model. In *Datiz v. Int'l Recovery Assocs.*,

15-cv-3549 (DRH)(AKT)(E.D.N.Y.), wherein BS sought almost a quarter of a million dollars in

attorneys fees,  a Report and Recommendation (R&R) was issued on March 12, 2020 by

Magistrate Judge A. Kathleen Tomlinson recommending that BS be awarded $80,000 in fees. A

copy of the R&R is attached herewith as Exhibit "9". The undersigned represents the defendant

named in *Datiz* and an objection to the R&R issued by Magistrate Judge Tomlinson was filed.

The Court is invited to review the objection to the R&R, filed as #157 on the *Datiz* docket.

In her R&R, Magistrate Judge Tomlinson chastised Mr. Sanders, Mr. Barshay and Mr. Cader

for many of the same improper billing tactics as are reflected in the BS billing records submitted

in the herein action. On page 24 of the R&R, Judge Tomlinson confirmed that most of the work

performed involved basic or intermediate tasks that could have been undertaken by a junior

associate or a paralegal at a significantly reduced rate. On page 25 of the R&R Judge Tomlinson

confirmed that work performed by BS is duplicative of work performed in other FDCPA actions.

Commencing at the bottom of page 26 of the R&R Judge Tomlinson correctly acknowledged the

*significant* portion of the hours billed which are excessive considering the simplicity of the

claims and the experience of the BS attorneys. The Court is referred to the examples of

overbilling listed by Judge Tomlinson on page 27 of the R&R. Same are truly incredible.

At the bottom of page 27 Judge Tomlinson confirms that the time records are "replete" with redundant internal consultations as well as overstaffing by multiple attorneys or by overqualified attorneys, reflecting duplicative work. On page 30 of the R&R, Judge Tomlinson correctly referenced to the limited success achieved by the plaintiff and the reasons why this limited success serves as a basis for a reduction of the fees claimed. The "limited success" portion of the R&R is incorporated by referenced herein as if stated at length herein as it is directly relevant to the limited success achieved by the Plaintiff in the herein FDCPA action. Indeed, and as set forth below, success on merits is the most critical factor in determining reasonable attorneys fees.

All of Judge Tomlinson's criticisms must be viewed together with the fact that an attorney must bill an adverse party in conjunction with a fee shifting statute under the same ethical guidelines required when billing a client. Notwithstanding, it is incredible that BS submitted grossly inflated time records in the herein action 15 days after Magistrate Judge Tomlinson issued the R&R in *Datiz*.

Further evidence of attempts by BS to obtain grossly inflated attorneys fees is found in the matter of *Byrnes v. Eltman Law, P.C.*, 2019 WL 4578922 (E.D.N.Y.), yet another of the thousands of FDCPA actions filed by BS. Therein, Magistrate Judge Tomlinson denied a motion for a default judgment filed by BS. A copy of a Declaration submitted by BS attorney Craig Sanders in support of the attorneys fees requested therein is attached herewith as Exhibit "10". Pursuant thereto, BS sought almost $9,000 in attorneys fees in regard to an FDCPA action entailing a *four page* boilerplate Complaint and a boilerplate motion for a default judgment.

THE REQUESTED FEES SHOULD
BE DRAMATICALLY REDUCED

The Plaintiff's fees request should be dramatically slashed. A party seeking attorneys fees has

the burden of demonstrating the reasonableness and necessity of the hours allegedly committed. If the court determines that any hours are excessive, redundant or otherwise unnecessary, the court should exclude those hours from the fee petition. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). A court may exclude any unreasonable hours from a fee request by making across-the-board reductions in the amount of hours claimed. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

The Plaintiff and his attorneys have the burden of demonstrating the reasonableness and necessity of the hours allegedly committed as set forth in the BS time records. If this Court uses conscientious and detailed inquiry into the validity of representations by the BS attorneys that a certain number of hours were reasonably and usefully expended, then a large reduction in fees should be effected. This Court must exclude those hours that were not reasonably expended by the BS attorneys, *which constitute the bulk of the alleged time entries*. This Court should determine that the vast bulk of the alleged hours are excessive, redundant and were otherwise unnecessary and, therefore, exclude those hours from the fee petition.

This Court should make a dramatic across-the-board reduction in the amount of hours claimed by BS. This Court has vast experience with the practice of law. When this vast experience is invoked to assess the reasonableness of the hours allegedly spent on this particular case by BS, the unreasonableness of the hours should be crystal clear. A simple individual FDCPA action, with only one alleged de minimis, unintentional violation at issue, does not require three attorneys and can be easily handled by one attorney.

THE COURT IMPROPERLY
AWARDED THE FULL $1,000
IN FDCPA STATUTORY
<u>DAMAGES TO THE PLAINTIFF</u>

As it relates to the issue of degree of success and the affect same has on the issue of attorneys fees, the Court herein improperly awarded the maximum $1,000 in FDCPA statutory damages to the Plaintiff without either considering 1) factors required to be considered by the FDCPA or; 2) compelling the Plaintiff to come forward with proof in support of the maximum FDCPA statutory damages. The FDCPA provides for a maximum of $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2). Statutory damages may be awarded if the statute was violated, although a court must then exercise its discretion to determine how much to award, from zero to $1,000. *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998). However, a finding of a violation of the FDCPA does not automatically entitle a plaintiff to any statutory damages. *Quinn v. Recovery Partners, LLC*, 2011 WL 2976288, at *5 (M.D. Pa.). In calculating an appropriate FDCPA statutory damages award, *if any*, the Court *must* consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Awards of the statutory maximum are typically granted *only* where defendants' violations are egregious. *Dona v. Midland Credit Mgmt., Inc.*, 2011 WL 941204, at *3 (E.D.N.Y.), adopted by, 2011 WL 939724 (E.D.N.Y.). Courts award maximum statutory damages only when the facts evidence a pattern of threats, abuse, or harassment. *Abrahmov v. Fidelity Info. Corp.*, 2013 WL 5352473, at *4 (E.D.N.Y.); *Centerbar v. Esser James & Associates, LLC*, 2018 WL 335880, at *7 (W.D.N.Y.)(wherein the undersigned represented the plaintiff therein, awarding the full $1,000 finding defendants failed to identify themselves as debt collectors, called plaintiff's place of employment, threatened legal action, gave the false impression that they were attorneys with a law firm, and threatened forcible recovery); *Clomon v. Jackson*, 988 F.2d 1314, 1316 (2d Cir.

1993)(upholding award of $1,000 in FDCPA statutory damages where defendant, an attorney, "authorized the sending of debt collection letters bearing his name and a facsimile of his signature without first reviewing the collection letters or the files of the persons to whom the letters were sent"); *Dunn v. Advanced Credit Recovery, Inc.,* 2012 WL 676350, at *3 (S.D.N.Y.)(awarding $1,000 to plaintiff where representative of defendant debt collector claimed to be an attorney and provided details of the debt, along with plaintiff's date of birth and social security number, to a third party); *Baruch v. Healthcare Receivable Mgmt., Inc.,* 2007 WL 3232090, at *4 (E.D.N.Y.) (awarding $1,000 in statutory damages where defendants repeatedly contacted and threatened to sue alleged debtor and harm her credit rating); *Divella v. Empire Credit & Collection, Inc.*, 2017 U.S. Dist. LEXIS 25008, at *4 (E.D.N.Y.)(Westlaw citation unavailable)("Given the flagrant nature of Defendant's noncompliance……….the Court finds that an award of the maximum $1,000 in statutory damages is appropriate."); *Quintanilla v. Credit Smart,* LLC, 2014 U.S. Dist. LEXIS, at *5-6 (E.D.N.Y.) adopted by 2014 WL 3530977 (E.D.N.Y.)(maximum $1,000 statutory damages where a debt collector attempted to collect a debt it knew or should have known it had no legal right to collect based upon expiration of statute of limitations); *Farmer v. Riverwalk Holdings, Ltd.,* 2014 WL 1745433, at *2-3 (E.D. Tenn.) (awarding $1,000 in statutory damages where the defendant used a "false, deceptive and misleading warrant and affidavit to collect a debt"); *Risorto v. Malcolm S. Gerald & Assocs., Inc.,* 2014 WL 1328524, at *3 (D. Colo.) (awarding $1,000 where the defendant called the plaintiff daily for many months and on at least 140 different occasions, failed to leave messages and allowed calls to go to voicemail but would say nothing, resulting in 'dead air' voicemails); *Rivera v. Nat'l Check Processing, LLC,* 2011 WL 996340, at *2 (W.D. Tex.) (awarding $1,000

in statutory damages where the defendant continuously called the plaintiff's home and work phones, threatening to have her arrested, bring charges against her, and to add attorney's fees to the debt); *Harding v. Check Processing, LLC*, 2011 WL 1097642, at * 3 (N.D. Oh.)(awarding $1,000 in statutory damages where debt collector falsely asserted that plaintiff committed a felony, that a felony warrant was issued for plaintiff's arrest and that plaintiff would be jailed if debt was not paid); *Annis v. E. Asset Mgmt., LLC,* 2010 WL 1035273, at *5 (W.D.N.Y.) (awarding $1,000 in statutory damages where defendant's violations of the FDCPA included four months of calling plaintiff almost daily, threatening litigation, and targeting both the plaintiff and her family); *Healy v. Midpoint Resolution Group, LLC,* 2010 WL 890996, at *6-7 (W.D.N.Y.)(full $1,000 in statutory damages finding multiple intentional violations of the FDCPA.); *Abby v. Paige*, 2013 WL 141145, at *28 (S.D. Fla.) (full $1,000 in FDCPA statutory damages finding defendant violated three provisions of the FDCPA on six occasions.)

When the facts do not support an award of statutory damages, courts do not award them. In an oft-cited FDCPA decision, the Court of Appeals for the Second Circuit expressly awarded *zero* statutory damages in regard to FDCPA claims which were more serious than the "failure to advise that the debt amount is increasing" claim at issue in the herein action. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27-28 (2d Cir. 1989)(a Notice was printed in large type as "48 HOUR NOTICE." The Notice also stated in capital letters: "Notice is Hereby Given That This Item Has Already Been Referred For Collection Action," "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full," and "Pay This Amount Now If Action Is To Be Stopped."). Other FDCPA case decisions indicate a total rejection of any FDCPA statutory damages. *Fasten v. Zager*, 49 F. Supp. 2d 144, 150 (E.D.N.Y.)

(wherein the undersigned represented the debt collector named therein); *Hooks v. Forman HOH Elaides & Ravin, LLC*, 2015 WL 5333513, at * 41 (S.D.N.Y.); *Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 994 (8th Cir. 2005). *See also Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 2005)("….in the instance of a single trivial and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all"). Based upon a proper analysis of the § 1692k(b)(1) factors to the failure to advise that the debt amount was increasing and, and the facts concerning the herein Plaintiff, this Court would have been justified in awarding zero statutory damages to *this* Plaintiff. A copy of the transcript of the Plaintiff's deposition is attached herewith as Exhibit "11". The Plaintiff testified that he received multiple letters which demonstrated that his account balance was increasing and that he knew his DB credit card incurred interest but that he could not pay his DB credit card because of employment issues. (Depo. trans., p. 15, lines 11-25; 16, 2-25; 17, 2-16; 21, 15-18; 22, 2-5; 28, 2-12; 31, 2-16; 35, 11-22; 37, 23-25; 38, 2-20). Thus, this Court's finding that the Defendant's letter violated the FDCPA by failing to advise the Plaintiff that the debt amount was increasing, which the Defendant still disputes, is, at most, a judicial finding of a single trivial and unintentional violation of the FDCPA.

Even if this Court found that awarding FDCPA statutory damages to this Plaintiff is warranted, application of the § 1692k(b)(1) factors to the herein action should have resulted in, at most, a few hundred dollars in FDCPA statutory damages. *Katz v. Sharinn & Lipshie, P.C.*, 2013 WL 4883474, at *19-20 (E.D.N.Y.)(awarding $250 for one violative telephone message); *Cordero v. Collection Co., Inc.*, 2012 WL 1118210, at *2 (E.D.N.Y.) ($250 statutory damages for one letter requesting payment of an outstanding medical bill in order to avoid any further

legal action); *Bonafede v. Advanced Credit Solutions, LLC*, 2012 WL 400789, at *2-3 (W.D.N.Y.)($250 in statutory damages on numerous occasions, disclosure of confidential information to other family members, and threatening legal action); *Copper v. Global Check & Credit Servs.*, 2010 WL 5463338, at *2 (W.D.N.Y.) ($250 statutory damages where defendant called plaintiff's daughter more than once, disclosed plaintiff's debt, and failed to provide proper notice of the debt); *Richard v. Oak Tree Group, Inc.*, 2008 WL 5060319, at * 24 (W.D. Mi.)($50 for a case about a "..poorly written letter…"); *Sterling v. Am. Credit & Collection, LLC*, 2012 WL 3553757, at * 3 (D. Col.)($250 for "….more than de minimis or technical…" violation); *Fontana v. C. Barry & Assocs.,* 2007 WL 2580490 (W.D.N.Y.)($250 in statutory damages where defendant's conduct was not frequent or persistent, but included improperly notifying plaintiff's family members of the debt); *Mostiller v. Chase Asset Recovery Corp.,* 2010 WL 335023, at *2 (W.D.N.Y.) ($150 in statutory damages for one telephone message threatening unintended legal action.)

In regard to the "frequency and persistence of noncompliance" by the herein Defendant. The Plaintiff bases his claim on one letter. No other communications are alleged. In regard to the "nature of noncompliance", the Plaintiff testified that he was aware that his DB account accrued interest thus the "nature of the noncompliance" *was meaningless to the Plaintiff*. The Plaintiff did not allege that the letter impeded his ability in any way, shape or form to pay his DB debt, he simply testified that he could not take advantage of the greatly reduced settlement offers because he was unemployed. In regard to the Defendant's "intent" to violate the FDCPA, there was none. The Defendant had no dastardly motivation by sending the letter. Indeed, the letter was sent in

the attempt to allow the Plaintiff to pay his debt via greatly reduced amounts and via installment payments. In doing so, the Defendant was simply attempting to collect a legitimate debt owed by the Plaintiff.

"Plaintiff bears the burden of proving the level of statutory damages she seeks by competent testimony or other admissible evidence." *Thornton v. United Collections Servs., L.L.C.*, 2007 U.S. Dist. LEXIS 92997, at *2-3 (E.D. Mich.)(Westlaw citation unavailable). Instead of compelling the herein Plaintiff to testify in support of his claims for FDCPA statutory damages, or provide other admissible evidence in support thereof, this Court simply bypassed this requirement and awarded the full $1,000 out of hand after an in-court conference.

THE PLAINTIFF OBTAINED
LIMITED SUCCESS

The U.S Supreme Court has recognized most critical factor in a district court's determination of what constitutes reasonable attorneys fees is the degree of success obtained by the Plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 119, 113 S.Ct. 566 (1992); *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005); *Pino v. Locascio*, 101 F.3d 235, 237-38 (2d Cir. 1996). Here, the Plaintiff's Complaint set forth two FDCPA claims, the much more serious of which is the allegation that the Defendant sent a collection letter, containing various settlement offers, in the deceptive effort to obtain a partial payment for the purpose of restarting the statute of limitations on the debt owed by the Plaintiff. However, as legal action was already commenced against the Plaintiff, his attorneys were forced to withdraw these allegations. Thus, the Plaintiff succeeded on the very lesser FDCPA claim. Also, for the reasons set forth above, the Court mistakenly awarded the full $1,000 in FDCPA statutory damages, to which the Plaintiff is clearly not entitled. Thus, the Plaintiff's degree of success in this action is minimal, at best.

The assessment of success is determined by the quality of relief obtained compared to that which a plaintiff sought to achieve as evidenced by the allegations in her complaint. This comparison promotes the court's central responsibility to make the assessment of that which constitutes a reasonable fee. *Barfield v. N.Y. City Health & Hospital Corp.*, 537 F. 3d 132 (2d Cir. 2008). In determining a proper fee reduction for not succeeding on all claims, a court may reduce the award to account for the limited success. *Separ v. Nassau County Dep't of Social Services*, 327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004); *New York City Unemployed & Welfare Council v. Blezenhoft*, 742 F.2d 718, 724 (2d Cir. 1984)(affirming full denial of attorneys fees where plaintiff's level of success was *de minimis*); *Natale v. Hartford*, 1989 U.S. Dist. LEXIS 13212 *16 (D. Conn.)(Westlaw citation unavailable)(reducing requested lodestar by 66.6% based upon limited success); *Powell v. Caray Int'l, Inc.*, 547 F. Supp. 2d 1281 (S.D. Fla. 2008)(reducing fees request by 67% after plaintiff accepted offers of judgment that were less than 2% of the total amount sought); *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987)(67% reduction in requested fees where two million was sought and $30,000 obtained); *Diver v. Goddard Mem'l Hosp.*, 783 F.2d 6, 6 (1st Cir. 1987)(upholding award of $1,000 where plaintiff sought $125,000 in damages and jury awarded $2,028).

A court should also reduce a fee award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the result produced. *E.S. v. Katonah- Lewisboro School Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011). Hours are not reasonably spent if they are excessive, meaning that too much time is devoted to a particular matter, or duplicate, which is the same matter covered at a different time or by more than one attorney. *Gingras v. Lloyd*, 585 F. Supp. 684 (D. Conn. 1983). The experience and

credentials of an attorney are also valuable factors for a court to use to determine if hours committed to a litigation were reasonable. *Finkel v. Omega Common Servs.*, 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)(50% reduction upon fees requested finding that many submissions were boilerplate, no novel or particularly difficult issue of law were implicated, many entries lacked sufficient detail, also Plaintiffs routinely worked on ERISA cases which further bolstered the finding that the expenditures were unreasonable.) *Husain v. Springer*, 2013 WL 1122718 (E.D.N.Y.)(reducing fees by stating that counsel spent an inordinate amount of time on the case "…which belied his experience.") Both *Finkel* and *Husain* are especially relevant herein as each demonstrate that excessive experience in a particular area of law mandates that an attorney demonstrate pinpoint time efficiency when litigating an action related to that area of expertise. This burden was clearly not met by the BS attorneys in conjunction with this action.

FRE 408 DOES NOT PRECLUDE
DISCLOSURE OF PLAINTIFF'S
<u>SETTLEMENT DEMAND</u>

Lastly, there is nothing improper about revealing the $7,500 settlement offer tendered by the Plaintiff to demonstrate the unjustified attempts to obtain excessive attorneys fees by BS in conjunction with FDCPA actions. Fed. R. Evid. 408(a) provides that evidence relating to settlement negotiations is inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.". By its plain terms, however, the Rule provides that a court "may admit" such evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Thus, although the Rule is intended to facilitate candid settlement discussions, it is by no means "a blanket rule of

22

inadmissibility for any and all statements in the settlement context." *Carr v. Health Ins. Plan of Greater New York, Inc.,* 2001 U.S. Dist. LEXIS 6766 (S.D.N.Y.)(Westlaw citation unavailable.) The Rule "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations." *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345, 351 (2d Cir. 2009). As District Judge Jack Weinstein of this district court has explained, "[t]he Rule is based on the policy of promoting the compromise and settlement of disputes," by taking into account "the reality that permitting the consideration of settlement offers as reflecting an admission of liability would discourage parties from discussing settlement or making settlement offers." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence § 408.02[1]* (Joseph M. McLaughlin ed., 2d ed.); *Carney v. American Univ.,* 151 F.3d 1090, 1095 (D.C. Cir. 1998) (statements from settlement negotiations admissible to prove a separate claim of retaliation); *Eisenberg v. University of NM,* 936 F.2d 1131, 1134 (10th Cir. 1991)(affidavit obtained in settlement negotiations admissible to impose Rule 11 liability); *Urico v. Parnell Oil Co.,* 708 F.2d 852, 854-55 (1st Cir. 1983) (evidence of settlement negotiations admissible to show interference with efforts to mitigate damages); *Resolution Trust Corp. v. Blasdell,* 154 F.R.D. 675, 681 (D. Ariz. 1993)(evidence of settlement negotiations admissible to prove retaliatory motive); *Matter of Fisher*, 908 F.Supp.2d 468 (S.D.N.Y. 2012)(settlement evidence admissible to prove lawyer misconduct). The disclosure herein of the Plaintiff's grossly excessive $7,500 settlement has nothing to do with any admission of liability by a defendant or with proving or disproving the validity of the Plaintiff's FDCPA claims. Nothing about the disclosure of the Plaintiff's grossly excessive $7,500 settlement demand would discourage any party from discussing settlement or making settlement offers. On the contrary, the disclosure of

the Plaintiff's grossly excessive settlement demand may serve to discourage the BS attorneys from attempting to extract prohibitively unjustified attorneys fees in conjunction with the thousands of FDCPA actions filed by BS via grossly excessive settlement demands. This discouragement would result from the Court greatly reducing the BS fee request as requested herein. Indeed, had Mr. Barshay conveyed a reasonable settlement demand, this action may have been settled at the outset, thus avoiding the expenditure of the judicial resources which were required in this action.

## CONCLUSION

For the reasons set forth heretofore the Court should dramatically reduce the amount of attorneys requested by the Plaintiff by at least 75%.

DATED: New York, New York
       April 24, 2020

Respectfully submitted,

/ s /  *Robert L. Arleo*