**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CRISTIAN D. CORTEZ,

Plaintiff,

vs.

FORSTER & GARBUS, P.C.,

Defendant.

Case No.: 1:17-cv-06501-FB-RLM

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**BARSHAY SANDERS, PLLC**

Jonathan M. Cader, Esquire
Craig B. Sanders, Esquire
David M. Barshay, Esquire
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
csanders@barshaysanders.com
dbarshay@barshaysanders.com
jcader@barshaysanders.com

*Attorneys for Plaintiff*

Plaintiff Cristian D. Cortez ("*Plaintiff*") hereby submits the instant memorandum in further support of his motion for attorneys' fees in this case pursuant to 15 U.S.C. § 1692k(a)(3).

## PRELIMINARY STATEMENT

**"It is well-settled that parties 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its adversary] in response'."[1]**

Despite this well-settled maxim, that is precisely what Defendant is attempting to do here. Indeed, when the Court reads Defendant's opposition to Plaintiff's motion for fees, it will see a monument to contradiction. On the one hand, Defendant's preliminary statement asks this Court to consider the "simplicity of the FDCPA," which it repeatedly describes as having been "straightforward, simple and uncomplicated." *Dkt. No.* 58 at pp. 1-3. On the other, the Court can review the docket and see that it was Defendant who proffered a motion for summary judgment with sixteen exhibits; filed an improper reply with an additional twelve exhibits; filed a motion for reconsideration of the summary judgment Order; sought leave to file additional supplemental authority; and filed an improper notice of appeal, among other actions.

In sum, while it is Defendant who insists that this case was "straightforward, simple and uncomplicated," it was also Defendant who caused this case to remain pending for nearly three years. This is a further contradiction in Defendant's opposition; the opposition is rife with *ad hominem* attacks on the undersigned counsel, repeatedly accusing the Firm of having adopted a "business model" which is purportedly designed to generate fees in "simple" cases such as this. As was noted above, however, this contention is disingenuous, if not risible, insofar as the record plainly shows that it was Defendant, and Plaintiff (and/or Plaintiff's counsel) who caused this case to become unreasonably protracted. Harkening to the quote above, Defendant should not be heard

---

[1] *Bleecker Charles Co. v. 350 Bleecker Street Apartment Corp*., 212 F. Supp. 2d 226, 229 (S.D.N.Y. 2002) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580, n.11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)).

to complain that the fees sought by Plaintiff in this case are "inflated, dishonest, excessive and/or unfathomable," when it was the actions of Defendant which caused this case to become unreasonably protracted. To this end, it is also noted that the undersigned takes great umbrage with the scandalous allegation that this Firm acted in a "dishonest" manner at any time. Rather than respond in kind, we merely note our objection and rely on the fact that the record readily reveals the duplicity of Defendant's contention that any fees sought herein are "inflated, excessive or unfathomable." While the fees sought may be greater than those often found in FDCPA cases, none are inflated or excessive. Instead, all fees incurred in this case were as a direct result of—and in sole response to—*Defendant's* actions in over-litigating this "simple" case.

Finally, Defendant's suggestion that the Court should consider the purported Rule 408 discussions as an independent basis for reducing the fee request herein should be rejected, insofar as the communication cited is a flat-our rejection of Plaintiff's settlement offer, without counter from Defendant. Accordingly, Defendant's attempt to manufacture a "floor" for what the settlement value of this case could have been is not only unsupported, it is irrelevant to the extent that the record unequivocally shows that it was Defendant's affirmative actions in this case that compelled Plaintiff to respond. In other words, Defendant is asking this Court to relieve it of its responsibility for waging what was—at best—a war of attrition.

For all these reasons, as well as those set forth herein, the grant of the instant fee application would not operate to create the alleged windfall for Plaintiff and/or his counsel. Contrarily, denial of the fee application would incentivize Defendant (or, more specifically, this counsel) to continue to protract the litigation of similar cases by not being called to answer for the very situation he/it created. This is precisely why the FDCPA provides that a Court *must* award the prevailing plaintiff his costs and fees for successfully prosecuting such a case. Indeed, Congress recognized that,

absent the provisions of § 1692k, nearly every debt collector would be able to "out-leverage" any given consumer. Therefore, to deny fees in a case such as this would have a chilling effect on the plaintiff's bar, which would be contrary to the spirit and purpose of the FDCPA.

## PROCEDURAL HISTORY

The procedural history of this case is set forth at length in Plaintiff's moving brief and, therefore, will not be repeated here verbatim. That said, it bears repeating that the procedural history reveals why the fees in this case are in excess of what would be expected in an FDCPA case. As was summarized above, it was Defendant who filed a motion for summary judgment which it found necessary to support with 16 exhibits. *Dkt. No*. 21, *et seq.* In its reply on the motion for summary judgment, Defendant proffered a supplemental affidavit, with an additional 12 exhibits annexed thereto (*Dkt. No.* 25, *et seq.*) which necessitated a motion to strike by Plaintiff. *Dkt. No.* 25. After the Court denied Defendant's motion for summary judgment and granted judgment to Plaintiff, Defendant filed a motion for reconsideration (*Dkt. No.* 30), necessitating opposition from Plaintiff. *Dkt. No.* 31. Defendant continued to file notices of supplemental authority, which similarly required responses from Plaintiff. *Dkt. Nos.* 33-38. Even then, when Plaintiff sought leave of this Court to fix the Clerk's judgment on liability to include an amount for damages, *that* was opposed by Defendant. *Dkt. No.* 43. Despite the fact that it was clearly Defendant who caused this "simple" case to become protracted, it is Defendant who now has the temerity to come before the Court and accuse Plaintiff of improper actions or motives. When the Court sees the record for what it is, it should find that the fee application is both proper and warranted.

## ARGUMENT

### I. STANDARD OF REVIEW

As was set forth in Plaintiff's moving brief, Courts within the Second Circuit apply the "lodestar method" in determining the reasonable hourly rate and the reasonable number of hours required by the case to arrive at the presumptively reasonable fee. *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

To determine reasonable hourly rates, courts in the Second Circuit adhere to the forum rule, "which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (citing *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)). To determine whether the hours for which compensation is sought is reasonable, the Court may rely on its own familiarity with the case in evaluating the application. *Defelippo v. Morizio,* 759 F.2d 231 (2d Cir. 1985).

### II. THE HOURLY RATES SOUGHT BY PLAINTIFF'S COUNSEL ARE REASONABLE

Defendant's opposition does not appear to challenge the hourly rates sought by Plaintiff in the instant application ($370 for partners (Craig Sanders and David Barshay), $240 for associates (Jonathan Cader and Erica Carvajal), and $85 for paralegal time (Martha Montoya)), nor should it. As was noted in Plaintiff's moving brief, those are the rates which were approved for the same counsel in *Datiz v. International Recovery Associates, Inc*. (15- cv-3549-DRH-AKT Report and Recommendation dated March 12, 2020), in which Mr. Arleo was also counsel for the defendant.

Insofar as Defendant's opposition does not challenge the hourly rates sought, no discussion on this point is required. Instead, Defendant's primary challenge appears to be to the

reasonableness of the hours spent by Plaintiff's attorneys. Plaintiff's response is set forth *infra.*

## III. THE HOURS EXPENDED BY PLAINTIFF'S COUNSEL IN THE PROSECUTION OF THIS CASE WERE BOTH NECESSARY AND REASONABLE

The gravamen of Defendant's opposition centers on the contention that that the undersigned firm failed to exercise proper "billing judgment" in submitting the instant fee application to the Court. *Dkt. No. 58* at pp. 5-15. While Plaintiff does not disagree with the contention that the exercise of billing judgment is a necessary component of any fee application (*Rudler v. Houslanger & Assocs., PLLC*, No. 18CV7068SFJAYS, 2020 WL 473619, at *7 (E.D.N.Y. Jan. 29, 2020)), he disagrees with the suggestion that such judgment was not properly (if not generously) employed here.

Indeed, Defendant's argument is long on rhetoric, but short on facts or law. While the section of Defendant's opposition dedicated to this argument repeatedly accuses the undersigned counsel of being "dishonest" in its fee application, in an "unethical manner" by "inflating" or "padding" its bills and "churning" the file, the evidence does not bear out such a finding. As the Court can see, there is at least one reference to an "honest" fee petition in Defendant's Opposition (p. 5); four references to "ethical" guidelines (pp. 5, 13); one accusation of "intentionally inflating" the bills (p. 7); two allegations of "padding" (pp. 2, 12); two allegations of "churning (p. 6); and seven discussions of "grossly" inflating (pp. 3, 13, 23, 24)." These allegations raise significant ethical concerns on the part of Defendant, insofar as such allegations should neither be levied nor taken lightly. That is particularly so where, as here, the billing records for this case show that fifty eight (58) separate entries were 'non-billed' as a part of this Firm's billing judgment. *See Dkt. No.* 58-1. To accuse the Firm of unethical billing conduct would be scandalous under any circumstance but, under these circumstances, may be considered frivolous and reckless, if not itself sanctionable.

In an attempt to support these broad and sweeping generic allegations, Defendant's brief

cites to a paucity of billing items which it posits could have been handled in less time by attorneys possessing the skills of those assigned to this case. While it may be true that nearly any task could potentially be handled more efficiently, the arguments advanced by Defendant are based on pure speculation and conjecture. Further, they ignore the fact that it is the historically aggressive and condemnatory tactics of Defendant's counsel which necessarily complicate even the simplest of tasks.

In sum, Plaintiff respectfully submits that the Court should find that the undersigned counsel properly exercised its billing judgment when submitting the instant application to the Court and, attendantly, should reject any argument of Defendant to the contrary.

## IV. THE REQUESTED FEES SHOULD NOT BE REDUCED—LET ALONE "DRAMATICALLY"

In the next prong of its opposition, Defendant argues that the fees sought by Plaintiff's counsel herein should be reduced "dramatically." In support of this one-page argument, Defendant does little more than incorporate the portion of its argument which posits that the number of hours spent are purportedly "excessive." As was noted above, Defendant's discussion on this point ignores the removal of 58 entries from the time records in connection with the instant application, and is otherwise based on conjecture that the tasks so billed could have been handled in less time.

While it is true that the Court may exercise its discretion to reduce a fee application by an across-the-board reduction, as opposed to conducting a line-by-line analysis, no such reduction is unwarranted here. The reason for this is twofold. First, the fee application herein seeks compensation at an hourly rate below that at which the Firm believes would otherwise be justified. In an effort to eliminate that argument, the instant application seeks reimbursement at the rates most recently approved for these very attorneys. Further, the Firm has voluntarily reduced the amounts sought by fourteen percent (14%) as a part of its "billing judgment" in submitting the

instant application. Insofar as that exceeds the range for which fee applications have been reduced where no such reduction was voluntarily made,[2] the Court should find that any reductions which would otherwise be warranted have already been made as a part of this application.

## V. DEFENDANT'S "DAMAGES AWARD" ARGUMENT SHOULD BE DISREGARDED

Defendant next dedicates a significant portion of its opposition brief (pp. 14-20) to an argument that the Court purportedly erred in awarding $1,000 in statutory damages to Plaintiff upon its finding of liability against Defendant. This argument has limited—if any—relevance to Plaintiff's fee application, particularly since Defendant's opposition does not seek any affirmative relief in this regard (nor could it). Even if the damages award were not appropriate as Defendant suggests (it was), the argument has no bearing on the question of whether the rates charged by Plaintiff's counsel and the hours expended are reasonable. To this end, in the interests of judicial economy, Plaintiff declines Defendant's invitation to debate an irrelevant point or collateral attack.

## VI. DEFENDANT'S "LIMITED SUCCESS" ARGUMENT SHOULD BE DISREGARDED

In the next point of its Opposition, Defendant argues that Plaintiff's fee award should be reduced by virtue of the fact that Plaintiff purportedly obtained "limited success" in this case. Defendant's argument is disingenuous insofar as Plaintiff obtained complete success on the claims that proceeded to judgment in this case. Moreover, this is simply another attempt by Defendant to collaterally attack the fee application—an implicit recognition that attacking the application on its merits will be fruitless. As with the above, Plaintiff similarly declines Defendant's invitation to

---

[2] See, e.g., *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (SIL), 2015 WL 5308094 (E.D.N.Y. Sept. 10, 2015) (10% reduction); *Pilitz v. Incorporated Village of Freeport*, No. CV 09-4078 (ETB), 2011 WL 5825138 (E.D.N.Y. Nov. 17, 2011) (5% reduction for "block billing" entries); *Recca v. Asset Maximization Grp*., Inc., No. 15 CIV. 07667 (LGS), 2016 WL 1275052 (S.D.N.Y. Mar. 31, 2016) (10% reduction); *Wilder v. Bernstein*, 975 F.Supp. 276, 283–284 (S.D.N.Y. 1997) (10% reduction).

debate this irrelevant point for reasons including, but not limited to, that the cases relied upon by Defendant do not involve FDCPA claims and many of which emanate from outside this Circuit.

## VII. DEFENDANT'S REQUEST TO HAVE THIS COURT TO CONSIDER ITS SETTLEMENT POSITION SHOULD BE REJECTED

In the final prong of its opposition, Defendant asks this Court to consider its "offer of settlement" as a factor purportedly warranting a reduction of the fee request sought herein. Defendant's argument should be rejected, because Rule 408 purportedly does not preclude the Court from considering such otherwise protected communications for the purposes contemplated by the instant motion. While Plaintiff does not necessarily disagree with that premise as a generic statement of law, he does disagree with the argument on the facts of this case. More specifically, the communication cited by Defendant is a letter dated February 1, 2018, annexed to Defendant's opposition as *Dkt. No.* 58-1. This letter does not convey a settlement offer, but, instead, rejects Plaintiff's demand without counter. Defendant's attempt to assuage Plaintiff's demand as "unreasonable" solely by attempting to backfill its own argument by citation to the billing records now before the Court is beyond the pale. Defendant—on its own accord—chose to reject the demand without counter at the time it was made. In other words, Defendant chose to proceed at its own peril. The fact that it subsequently attempted to defeat Plaintiff by out-leveraging him financially—because Defendant had greater resources to fight this battle than Plaintiff did—does little more than underscore why the requested application should be granted in its entirety.

///// remainder of the page intentionally blank //////

**CONCLUSION**

For all these reasons, Plaintiff respectfully that the Court grant Plaintiff's fee application in its entirety, together with such other and further relief as this Court deems just, appropriate and proper.

Dated: Garden City, New York
May 8, 2020

Respectfully submitted,

BARSHAY SANDERS, PLLC

By: s/ *Jonathan M. Cader*

Jonathan M. Cader, Esquire
David M. Barshay, Esquire
Craig B. Sanders, Esquire
100 Garden City Plaza, Fifth Floor
Garden City, New York 11530
Telephone: (516) 203-7600
*jcader@barshaysanders.com*
*dbarshay@barshaysanders.com*
*csanders@barshaysanders.com*